IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Magistrate Judge Maritza Dominguez Braswell**

Civil Action No. 21–cv–03420–MDB

V.D.,[1]

    Plaintiff,

v.

KILOLO KIJAKAZI, Commissioner, Social Security,

    Defendant.

## MEMORANDUM AND ORDER

Plaintiff V.D. ["Plaintiff"] brings this action, pursuant to the Social Security Act ["the Act"], 42 U.S.C. 405(g), seeking judicial review of a final decision by Defendant Kilolo Kijakazi, the Acting Commissioner of the Social Security Administration ["Commissioner"], denying her application for disability insurance benefits and supplemental security income. (Doc. No. 1.) Plaintiff filed an Opening Brief, and the Commissioner responded. (["Opening Brief"], Doc. No. 13; ["Response"], Doc. No. 14.) The Commissioner has also filed the Administrative Record. (Social Security Administrative Record ["AR"], Doc. No. 17.) After carefully analyzing the briefs and the administrative record, the Court **AFFIRMS** the Commissioner's final decision.

---

[1] Pursuant to D.C.COLO.LAPR 5.2(b), "[a]n order resolving a social security appeal on the merits shall identify the plaintiff by initials only."

## BACKGROUND[2]

Plaintiff was born on April 24, 1956; she was sixty years old on the alleged disability onset date. (AR 28, 114, 116.) She speaks English and holds a graduate degree in computer science. (AR 69, 250-52.) Plaintiff's employment history includes positions as a computer systems engineer, a network administrator, a systems administrator, and a retail salesclerk. (AR 69-81, 252.)

On September 9, 2017, Plaintiff applied for disability insurance benefits, pursuant to Title II of the Act, and for supplemental security income, pursuant to Title XVI of the Act. (AR 26, 222-29.) In her applications, Plaintiff claimed that she had been unable to work, since November 2, 2016, due to "lupus," "PTSD," "depression," "anxiety," "rheumatoid arthritis," "left knee pain," "left ankle pain," "swelling pain and stiffness in both hands," "[R]eynaud's [sic] syndrome," and "Graves' [sic] disease." (AR 131.) The Commissioner denied Plaintiff's applications on January 9, 2018. (AR 26, 148-58.) Plaintiff then successfully requested a hearing before an administrative law judge ["ALJ"]. (AR 159-204.) That hearing took place, on April 22, 2019, before ALJ Bryan Henry. (AR 46-99.) Plaintiff appeared and testified at the hearing, accompanied by her attorney. (AR 46, 60-91.) The ALJ also heard testimony from a vocational expert. (AR 46, 91-98.) Medical opinions were provided by two non-examining state agency physicians, James Wanstrath, Ph.D., and David Gillum, M.D. (AR 116-29.)

At the hearing, Plaintiff testified regarding the nature of her impairments. (AR 81-91.) She testified that she suffers from debilitating pain, stiffness, and cold-sensitivity in her hands

---

[2] The following background focuses only on the elements of Plaintiff's history that are relevant to the Court's analysis.

and fingers caused by lupus-related Raynaud's disease. (AR 86-91.) Plaintiff told the ALJ that she experiences sudden, unexpected "flareups" of these symptoms several times each day. (AR 86.) She testified that, whenever these flareups happen, she loses almost all mobility in her hands and fingers for at least an hour at a time. (AR 86, 88.) She testified that the flareups cause her hands to turn "white as a sheet of paper" and her fingers to turn purple. (AR 88.) She explained that the flareups were even more intense in colder weather. (*Id.*) Plaintiff told the ALJ that the flareups were "continuous" and progressively worsening over the past few years. (AR 89.) She testified that she "almost expected [the symptoms] to never go away." (*Id.*) However, she admitted significant improvement from prescribed medication, as well as the use of fingerless gloves and heating pads. (AR 83, 87-88.) In addition to her physical impairments, Plaintiff reported an eighteen-month history of anxiety attacks, as well as issues with her concentration. (AR 81-82, 84.)

The ALJ also heard testimony from Plaintiff regarding her employment history. (AR 69-81.) Plaintiff testified that she previously worked as a systems engineer for a government contractor for roughly six or seven years. (AR 69-74.) She told the ALJ that she was effectively laid off from that job, in 2013, when the government contract expired. (AR 72, 78-79.) Plaintiff testified that she attempted to find another tech-related job after that, but was unable to do so. (AR 79.) She told the ALJ that she ended up working for Walmart, as a part-time retail salesclerk, for two years or so, but was ultimately fired from that position for taking "too many absences" for medical appointments. (AR 79-81.) She told the ALJ that she most recently worked at Target, but was let go from that position because the job was seasonal. (AR 81.) When

asked by the ALJ what "the major reason" was for her not seeking any computer science jobs in recent years, Plaintiff responded, "I'm obsolete." (AR 84.)

Plaintiff told the ALJ that she currently lives with a roommate, who is unable to work himself due to a physical disability. (AR 60-61.) Plaintiff testified that, on a typical day, she plays computer games and browses the internet on her iPad, watches television, reads books, and takes her dog for walks. (AR 62-68.) She testified that she is able to cook, clean, dress and bathe herself, run errands, and type out emails, all without issue. (AR 61-65.) She testified that she also helps her roommate with household chores. (AR 61-63.)

On May 9, 2019, the ALJ issued a written decision in accordance with the Commissioner's five-step, sequential evaluation process.[3] (AR 26-40.) The ALJ determined, at step one, that Plaintiff had not engaged in substantial gainful employment since November 2, 2016, the alleged onset date. (AR 28 ¶ 2.) At step two of his analysis, the ALJ found that Plaintiff had the following severe impairments: "systemic lupus erythatosus [sic] (SLE), Raynaud's syndrome of the bilateral hands, degenerative joint disease with right hip pain, left

---

[3] The five-step sequential analysis requires the ALJ to consider whether a claimant: (1) engaged in substantial gainful activity during the alleged period of disability; (2) had a severe impairment; (3) had a condition that met, or equaled, the severity of a listed impairment; (4) could return to their past relevant work; and, if not, (5) could perform other work in the national economy. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *Williams v. Bowen*, 844 F.2d 748, 750-52 (10th Cir. 1988). It is well-settled that, under this analysis, the claimant has the burden to establish a *prima facie* case of disability at steps one through four. *Williams*, 844 F.2d at 751 & n.2. The burden then shifts to the Commissioner, at step five, to show that the claimant retains sufficient residual functional capacity ["RFC"] to perform work in the national economy, given his age, education, and work experience. *Id.* A finding that a claimant is disabled, or not disabled, at any point in the five-step review is conclusive and terminates the analysis. *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 801 (10th Cir. 1991). To be disabling, the claimant's condition must be so functionally limiting as to preclude any substantial gainful activity for at least twelve consecutive months. 42 U.S.C. § 423(d)(1)(A), (2)(A); *Kelley v. Chater*, 62 F.3d 335, 338 (10th Cir. 1995).

shoulder osteoarthritis, anxiety, and post-traumatic stress disorder (PTSD)." (AR 30 ¶ 3.) The ALJ also found that Plaintiff suffered from a history of right-sided total knee replacement, thyroid disease, and osteopenia, though he determined that those impairments were "non-severe." (*Id.*) None of Plaintiff's impairments, alone or in combination, were found to be presumptively disabling at step three. (AR 30-32 ¶ 4.)

Prior to reaching step four, the ALJ assessed Plaintiff's residual functional capacity ["RFC"], and found her capable of light work, subject to the following limitations:

> [T]he claimant can occasionally lift and carry 20 pounds and frequently lift and carry 10 pounds. The claimant can sit for six hours in an eight-hour day, and stand and walk for six hours in an eight-hour day. She can occasionally climb ramps and stairs, and never climb ladders, ropes, and scaffolds. She can occasionally balance as part of her job requirements. She can occasionally stoop, crawl, crouch, and kneel. She can frequently handle, finger, and feel bilaterally. She should never be exposed to extreme cold. She can have occasional exposure to excessive vibration. She should never work at unprotected heights or around moving and/or dangerous machinery. She can have occasional contact with the public.

(AR 32 ¶ 5.)

In establishing this RFC, the ALJ evaluated Plaintiff's subjective allegations of her symptoms, the objective medical evidence, and the opinion evidence. (AR 32-40.) The ALJ determined that, while Plaintiff's impairments could reasonably be expected to cause some of her alleged symptoms, her testimony regarding the intensity, persistence, and limiting effects of her conditions was "not entirely consistent" with the overall record, which "suggest[ed] the claimant's impairments have been and could be well controlled through physical therapy and medication, and possibly mental health therapy." (AR 33, 39.) The ALJ likewise concluded that the objective medical evidence, though supportive of some functional limitations, did not support the existence of limitations greater than those set forth in the RFC assessment. (AR 39.) In

addition, the ALJ detailed his consideration of the medical opinion evidence, clarifying that he would not "defer or give any specific evidentiary weight, including controlling weight" to any of that evidence. (AR 37.) The ALJ first discussed the opinion from Dr. Wanstrath, regarding Plaintiff's functional limitations caused by mental impairments. (AR 37-38; *see* AR 116-29.) The ALJ deemed Dr. Wanstrath's opinion, which found that Plaintiff suffered only mild or moderate mental limitations, to be "persuasive," because it was "consistent with and supported by the evidence, as well as the claimant's own testimony." (*Id.*) The ALJ also discussed the opinion from Dr. Gillum, regarding Plaintiff's functional limitations caused by physical impairments. (AR 38; *see* AR 116-29.) The ALJ deemed Dr. Gillum's opinion, which found Plaintiff "capable of performing work at the laid exertional level," to be "moderately persuasive," given that it was also "consistent with the evidence." (*Id.*) However, the ALJ found "greater support in the record for additional limitations" than those espoused by Dr. Gillum, "including a preclusion of climbing ladders, ropes, and scaffolds, greater limitations and balancing and postural activities, as well as limitations and feeling with the bilateral upper extremities." (*Id.*)

At step four, the ALJ determined, based on the vocational expert's testimony, that Plaintiff was capable of performing her past relevant work as a computer systems engineer, "as generally and actually performed." (AR 40 ¶ 6.) For that reason, the ALJ concluded that Plaintiff was not under a "disability," as defined by the Act, and denied her applications for benefits. (AR 40 ¶ 7.) That denial prompted Plaintiff's request for judicial review. (Doc. No. 1; AR 1-22.)

**STANDARD OF REVIEW**

In social security disability cases, the Court's review is limited to determining whether: (1) substantial evidence supports the Commissioner's decision; and (2) whether the

Commissioner's decision comports with relevant legal standards. *Vallejo v. Berryhill*, 849 F.3d 951, 954 (10th Cir. 2017); *see generally* 42 U.S.C. § 405(g). "Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007) (internal citation omitted); *accord Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992) ("Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion."). Any conflict in the evidence is to be resolved by the ALJ, and not the Court. *See Rutledge v. Apfel*, 230 F.3d 1172, 1174 (10th Cir. 2000) ("We will not reweigh the evidence."). A finding of "no substantial evidence" is proper only if there is a "conspicuous absence of credible choices" or "no contrary medical evidence." *Trimiar v. Sullivan*, 966 F.2d 1326, 1329 (10th Cir. 1992) (quoting *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)). Further, "if the ALJ failed to apply the correct legal test, there is ground for reversal apart from a lack of substantial evidence." *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).

## ANALYSIS

Plaintiff challenges the ALJ's decision on two grounds. She argues, first, that the ALJ improperly evaluated her subjective allegations of her symptoms, particularly with regard to functional limitations caused by lupus-related Raynaud's disease. (Doc. No. 13 at 6-11.) On this issue, Plaintiff appears to make two arguments: (1) that the ALJ did not adhere to the proper framework to analyze her allegations concerning daily "flareups" of Reynaud's symptoms, which cause her to unexpectedly lose almost all control of her hands for at least an hour each time; and (2) that the ALJ's finding that her testimony was inconsistent with the overall record was not supported by substantial evidence. (*Id.*) Second, Plaintiff argues that the ALJ erred with

respect to his RFC assessment, by finding her capable of frequent handling, fingering, and feeling. (*Id.* at 11-15.) Plaintiff argues that this finding is also not supported by substantial evidence. (*Id.*) The Commissioner insists, however, that the ALJ properly considered the entire evidentiary record, and followed the applicable law, in determining that Plaintiff is not disabled. (Doc. No 14 at 1-18.)

I.      **Evaluation of Symptoms**

Plaintiff argues, first, that the ALJ erred in evaluating her subjective allegations regarding her symptoms. (Doc. No. 13 at 6-111.) Specifically, Plaintiff complains that the ALJ improperly discounted her allegations of extreme, disabling hand limitations caused by lupus-related Raynaud's disease. (*Id.*) She claims that "nothing cited in the medical history contradicts [her] testimony." (*Id.* at 9.)

In evaluating a claimant's RFC, the ALJ must consider all of the claimant's "symptoms, including pain, and the extent to which [those] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." 20 C.F.R. § 404.1529(a). This is a mandatory two-step process. SSR 16-3P, 2017 WL 5180304, at *2 (Oct. 25, 2017); *see generally* 20 C.F.R. § 404.1529 (regulations governing the evaluation of symptoms). First, the medical signs and laboratory findings must show the existence of medical impairment(s) that result from anatomical, physiological, or psychological abnormalities that could reasonably be expected to produce the symptoms alleged. SSR 16-3p at *3. Second, once such impairments are established, the ALJ must then evaluate the intensity and persistence of the symptoms, so as to determine how the symptoms limit the claimant's capacity to work. *Id.* at *4. Relevant factors to this inquiry include: (1) the claimant's daily activities; (2) the location, duration, frequency, and

intensity of pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication taken to alleviate pain or other symptoms; (5) treatment, other than medication, received for relief of pain or other symptoms; (6) any measure other than treatment used to relieve pain or other symptoms; and (7) other factors concerning the claimant's functional limitations and restrictions due to pain or other symptoms. *Id.* at *7-8.

The ALJ's symptoms findings "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Cowan v. Astrue*, 552 F.3d 1182, 1190 (10th Cir. 2008) (quoting *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995)). The ALJ's decision "must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." SSR 16-3p at *10. Because symptom findings are "peculiarly the province of the finder of fact," reviewing courts should "not upset such determinations when supported by substantial evidence." *Cowan*, 552 F.3d at 1190 (quoting *Kepler*, 683 F.3d at 391).

Here, in his written decision, the ALJ first summarized the appropriate framework for evaluating Plaintiff's subjective allegations regarding her symptoms. (AR 31-32.) The ALJ then summarized Plaintiff's allegations of her symptoms, including that: (1) she experiences "joint pain and stiffness" that "limit[s] her mobility all day;" (2) she "has trouble using both of her hands, and drops things;" (3) her "lupus related Raynaud's syndrome cause[s] continuous, progressing difficulty in hand use that [is] disabling when it flare[s], eliminating hand use for about an hour;" (4) she must use "fingerless gloves to do computer work;" (5) she "started

getting sores on her fingers over the past few months;" (6) "[s]he could not return to a job in retail because she can no longer do any stocking;" (7) "[w]hen she has a Raynaud's flare, her hands lose circulation and become ice cold" and "[s]he cannot move her fingers, or write;" (8) "[s]he has these flare ups a couple of times per day, everyday [sic];" (9) "[t]his is worse in the winter, regardless of heat available;" (10) "[g]loves and a heating pad are helpful sometimes;" (11) [f]lares also cause hand pain, and she must take an oxycodone;" (12) "[h]er hands become stiff and unresponsive, and her fingers will tingle;" and (13) "[a]t times, her fingers lock up and become immobile." (AR 32-33; *see* AR 60-91, 275-82.) Next, the ALJ determined that Plaintiff suffered from medically determinable impairments, which "could reasonably be expected to cause the alleged symptoms[.]" (AR 33.) The ALJ then determined that Plaintiff's allegations regarding her symptoms were "not entirely consistent with the medical evidence and other evidence in the record[.]" (*Id.*) As support for this conclusion, the ALJ referenced several inconsistencies between Plaintiff's subjective complaints and the medical evidence of record, including: (1) a November 28, 2017 physical examination within normal limits, which stated that Plaintiff "move[d] all extremities equally well" and had "[n]o clubbing, cyanosis, or pedal edema bilaterally" (AR 34; *see* AR 488-93); (2) a May 22, 2018 X-ray of Plaintiff's hands revealing no abnormalities (AR 34; *see* AR 541-43); (3) progress notes from a July 30, 2018 medical appointment, stating that Plaintiff's "lupus was stable" and controlled with medication (AR 34-35; *see* AR 590); (4) a March 12, 2019 treatment record from a rheumatology visit, showing that Plaintiff reported "continuous" Raynaud's symptoms which were alleviated somewhat by wearing gloves, but revealing, upon examination, "no raynauds [sic] present" (AR 35; *see* AR 645-47); and (6) a March 25, 2019 treatment record reflecting that Plaintiff's "lupus markers

10

look great" with "no evidence of active lupus related inflammation or antibodies" (AR 35; *see* AR 644). In addition, the ALJ referenced inconsistencies between Plaintiff's subjective complaints of severe, debilitating pain and her own testimony regarding her "unsuccessful search for work during the period at issue, coupled with her activities of daily living including light cleaning, doing laundry, walking her dog, preparing meals, helping her disabled roommate, shopping, going to church, going to the movies, handling finances and her own medical care, and driving[]." (AR 39; *see* AR 60-91, 275-82.)

      The Court finds that the ALJ's analysis clearly and thoroughly examined Plaintiff's subjective allegations regarding her symptoms, including her testimony concerning continuous, severe flareups of lupus-related Raynaud's symptoms in her hands. As set forth above, the ALJ provided numerous reasons for finding Plaintiff's symptoms were not as severe or functionally limiting as alleged, and a review of the record confirms these reasons are supported by substantial evidence. The ALJ's thorough analysis reflects that he considered the location, duration, frequency, and intensity of Plaintiff's symptoms (*see, e.g.*, AR 33-34 ("The claimant reported experiencing swollen hips and hands, with her last lupus flare being approximately six months before.")), precipitating and aggravating factors (*see, e.g.*, AR 35 ("The claimant reported that stress made her lupus worse[.]")), the type and effectiveness of medications (*see, e.g.*, AR 34 ("Notes further indicate the claimant reported previously using [P]laquenil, that was stopped as it caused nightmares and was ineffective in treating lupus[.]")), and Plaintiff's treatment aside from medication (*see, e.g.*, AR 35 ("The claimant reported . . . the Raynuad's [sic] had been continuous, but helped with wearing gloves."))). *See* 20 C.F.R. § 404.1529(c)(3); *see also* SSR 16-3p at *7-8. Accordingly, the ALJ adequately linked his findings to the evidence

11

and provided clear and specific reasons for his determination in accordance with the directives of *Kepler*, as well as SSR 16-3p and the governing regulations. Further, it appears that the ALJ, in formulating the RFC, accounted for Plaintiff's subjective symptoms regarding extreme and debilitating hand limitations caused by lupus-related Raynaud's disease, by precluding Plaintiff from exposure to extreme cold and limiting her to only frequently handling, fingering, and feeling with the bilateral upper extremities. (AR 39.) Plaintiff points to no evidence, beyond her own hearing testimony, to support a finding that the ALJ should have imposed additional restrictions. *See Lee v. Colvin*, 631 F. App'x 538, 543-44 (10th Cir. 2015) (holding that the ALJ did not commit reversible error by failing to provide "more specific references" to "pain in the RFC analysis," where the "record contain[ed] very limited references" to pain, and where the ALJ ultimately restricted the claimant to light work, thereby "account[ing] for this limitation" in a way that was "consistent with the medical evidence"); *Hodges v. Colvin*, 568 F. App'x 639, 641 (10th Cir. 2014) (rejecting the argument that "the ALJ's RFC determination should have included [the plaintiff's] subjective complaints," where the ALJ found that the objective medical evidence did not support the plaintiff's "allegations concerning the . . . limiting effects of his pain," and where the plaintiff did not "point to any medical evidence indicating his RFC should be more limited"). Accordingly, the Court finds no reversible error with respect to the ALJ's evaluation of Plaintiff's subjective allegations regarding her symptoms.

## II.     RFC Determination

Plaintiff next argues that the ALJ erred with respect to his RFC determination. (Doc. No. 13 at 11-15.) In his written decision, the ALJ found Plaintiff capable of "light work," as defined by 20 C.F.R. §§ 404.1567(b) and 416.967(b), but further limited Plaintiff to, among other things,

only "frequently handl[ing], finger[ing], and feel[ing] bilaterally." (AR 31 ¶ 5.) Plaintiff argues that the ALJ's finding is not supported by substantial evidence, because it is "imprecise and vague," and based entirely on the opinion from Dr. Gillum. (Doc. No. 13 at 14-15; *see* AR 38, 116-29.) Plaintiff complains that the ALJ should not have relied on Dr. Gillum's opinion in formulating her RFC, because the opinion was issued nearly one and a half years before the 2019 hearing, and because the opinion does not address her "inability to remain on-task for an entire day if she loses use of her hands for an hour at a time unexpectedly." (Doc. No. 13 at 14-15.)

Residual functional capacity is an assessment of the most that a claimant can do in a work setting, despite the claimant's mental and/or physical limitations. 20 C.F.R. §§ 404.1545(a), 416.945(a). "The determination of RFC is an administrative assessment, based upon all the evidence of how the claimant's impairments and related symptoms affect her ability to perform work-related activities." *Young v. Barnhart*, 146 F. App'x 952, 955 (10th Cir. 2005) (citing SSR 96-5p, 1996 WL 374183, at *2, 5 (July 2, 1996)). "The final responsibility for determining RFC rests with the Commissioner, based upon all the evidence in the record, not only the relevant medical evidence." *Id.* (citing 20 C.F.R. §§ 404.1527(e)(2); 404.1545(a)(3); 404.1546(c)).

In formulating a claimant's RFC, the ALJ must "discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record." *Weigel v. Astrue*, 425 F. App'x 706, 708-09 (10th Cir. 2011) (quoting SSR 96-8p, 1996 WL 374184, at *7) (alterations omitted). "The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (*e.g.,* laboratory findings) and nonmedical evidence

(*e.g.,* daily activities, observations)." *Hendron v. Colvin*, 767 F.3d 951, 954 (10th Cir. 2014) (quoting SSR 96-8p, 1996 WL 374184, at *7 (July 2, 1996)). The ALJ "must also explain how any material inconsistencies or ambiguities in the case record were considered and resolved." *Lawton v. Barnhart*, 121 F. App'x 364, 374 (10th Cir. 2005) (quoting SSR 96-8p, 1996 WL 374184, at *7).

      Here, the Court finds no basis for remand relating to the ALJ's RFC assessment. To the extent that Plaintiff argues that the ALJ erred by relying on Dr. Gillum's opinion to make his RFC assessment, the Court notes that Mr. Gillum's opinion is the *only* medical opinion evidence in the record that discusses Plaintiff's functional limitations from physical impairments. Dr. Gillum opined, based on his review of the available medical evidence, that Plaintiff was limited to frequent fingering, handling, and feeling in both hands, due to complications from lupus-related Raynaud's disease. (AR 125.) Dr. Gillum's opinion is both consistent with, and supported by, Plaintiff's treatment records and diagnostic findings from that time period, as expressly noted by the ALJ in his written decision. (AR 38.) Plaintiff points to no evidence, beyond her own testimony, to support a finding that the ALJ should have imposed additional restrictions than those espoused by Dr. Gillum. Accordingly, the Court rejects this point of contention, as well. *See Jones v. Colvin*, No. 16-cv-00553-RBJ, 2017 WL 393334, at *3 (D. Colo. Jan. 30, 2017) (finding no error in the ALJ's RFC determination, where the finding was substantially supported by the objective medical evidence within the record); *cf. Allen v. Colvin*, No. CIV-15-200-SPS, 2016 WL 5408139, at *3 (E.D. Okla. Sept. 28, 2016) (holding that the ALJ's RFC assessment—finding the claimant capable of medium work—was *not* supported by substantial evidence,

where "the ALJ failed to cite to any evidence in the record to support a finding that the claimant could lift and carry up to fifty pounds occasionally and twenty-five pounds frequently").

*  *  *

In this case, the ALJ properly exercised his responsibility as fact finder to analyze the evidence, and his determination of Plaintiff's RFC is well-grounded in that analysis. Accordingly, the final decision of the Commissioner must be affirmed. *See Nguyen v. Shalala*, 43 F.3d 1400, 1403 (10th Cir. 1994) (The Commissioner's final decision "must be affirmed if it is supported by substantial evidence and correct legal standards were used."); *see also Vigil v. Colvin*, 805 F.3d 1199, 1201 (10th Cir. 2015) ("In reviewing the ALJ's decision, we neither reweigh the evidence nor substitute our judgment for that of the agency.") (internal quotation marks omitted).

## CONCLUSION

For the foregoing reasons, **IT IS ORDERED THAT**:

(1) The Commissioner's final decision is **AFFIRMED**.

DATED: March 28, 2023.

BY THE COURT:

_____
Maritza Dominguez Braswell
United States Magistrate Judge